# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, <br>     Plaintiff, <br><br>     v. <br><br> JOHN DOE subscriber assigned IP address 71.59.3.125, <br>     Defendant. | **Consolidated Case No. 1:23-cv-02096-SDG** |
| JOHN DOE subscriber assigned IP address 73.237.132.194, <br>     Defendant. | Civil Action No. 1:24-cv-04880-SDG |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX-PARTE MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

1

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX-PARTE MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff Strike 3 Holdings, LLC ("Strike 3") hereby respectfully submits this Memorandum of Points and Authorities in support of its Ex-Parte Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference in the above-captioned matters.

### I.  INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC is the owner of original, award-winning motion pictures featured on its brand's subscription-based adult websites. Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Declaration of Jorge Arco, attached hereto as Exhibit "A."

Strike 3, using its proprietary forensic software, VXN Scan ("VXN"), monitored and detected the infringement of Strike 3's content. *See id.* at ¶ 41. VXN discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures. *See* Declaration of Patrick Paige, attached hereto as Exhibit "B". This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to

identify Defendant by correlating the IP address with John Doe's identity. *Id*. at ¶ 28. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service. Those include address 73.237.132.194: (Comcast Cable Communications, LLC). Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[1]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

---

[1] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

## II. FACTS

### A. Plaintiff Has a Serious Copyright Infringement Problem

Strike 3 holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *MILFY*, *Slayed*, *Tushy*, *Tushy Raw*, and *Vixen* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. Decl. Arco at ¶ 14. Strike 3 is owned entirely by General Media Systems ("GMS") and has existed since 2015. *Id.* at ¶ 9.

Although it started out small, the Brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 15. This success is no fluke. Strike 3's philosophy has always been to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 17–18. Moreover, Strike 3's motion pictures are known for having some of the highest production budgets of any in the adult industry. *Id.* at ¶ 20.

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world. *Id.* at ¶ 21. Strike 3 is also frequently the number one seller of adult DVDs in the United States. *Id.* at ¶ 22. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 23. This success has led to

numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 24.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3, and Strike 3 "can compete in the industry, but [it] cannot compete when [its] content is stolen." *Id.* at ¶ 27. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 40.

### B. Plaintiff Brings Its Litigation in Good Faith

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices that people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 34. Therefore, Strike 3 only files strong cases against extreme infringers. *Id.* at ¶ 35. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id.* Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 36. Additionally, Strike 3 does not send demand letters. *Id.* Finally, although certainly

Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding the content they choose to enjoy.  Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of a case; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity.  Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs and licenses.  *Id.* at ¶ 38.  Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and direct those who infringe content to the avenue of legitimately acquiring access to Strike 3's works.  *Id*.

### III. STANDARD

"In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the only potential avenue for discovery is [a court order under] Rule 26(d)(1).'" *Strike 3 Holdings, LLC v. Doe*, 964 F.3d

1203, 1207 (D.C. Cir. 2020) (citation omitted). "Under Rule 26(d)(1) of the Federal Rules of Civil Procedure, '[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f),' unless authorized by court order." *Roe v. Doe*, No. 19-03293 (JPB), 2019 WL 13215281, at *1 (N.D. Ga. Oct. 10, 2019).

According, Plaintiff must show "good cause exists to grant preliminary discovery in cases involving fictitious party defendants, a district court should consider the following: (1) whether the plaintiff has established a *prima facie* case; (2) whether the plaintiff has explained the steps already taken to identify the defendant; (3) whether the plaintiff has demonstrated that the requested discovery will likely uncover the defendant's identity; and (4) whether the plaintiff's discovery request is narrowly tailored."[2] *Id.* at *2 (citations omitted). "[C]ourts in the Northern District of Georgia routinely grant limited preliminary discovery in cases where the plaintiff only knows the defendant's internet protocol ('IP')

---

[2] As noted by Court of Appeals for the District of Columbia, the Federal Rules were amended in 2015 to remove the "good cause" standard "and replaced it with the overarching relevance and proportionality standard[.]" *Strike 3 Holdings*, 964 F.3d at 1207 n.2. Nevertheless, courts "have continued to look to the good cause factors in analyzing motions for expedited discovery." *See Strike 3 Holdings, LLC v. Doe*, No. 20-5123 (KSM), 2020 WL 6342770, at *1 (E.D. Pa. Oct. 29, 2020). Strike 3 presents the traditional good cause standard here because several of those factors address the relevance and proportionality of Plaintiff's request, and thus discovery is appropriate under either standard.

7

address and seeks subpoenas to identify the defendant based on this information." *Id.* at *1 (collecting cases); *see also Strike 3 Holdings, LLC v. Doe*, No. 22 -1166-(RBD)(DCI), 2022 WL 17582574, at *1 (M.D. Fla. Dec. 12, 2022).

## IV. ARGUMENT

### A. Plaintiff's Complaint Makes a *Prima Facie* Claim for Direct Copyright Infringement

To make a *prima facie* claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 49–51.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office. *See* 17 U.S.C. § 410(c); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 203 L. Ed. 2d 147, 139 S. Ct. 881, 888 (2019). Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's Mr. Arco who used Plaintiff's forensic software to track and record BitTorrent activity.

*See* Decl. Arco. Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted Works. *See* Decl. of Susan B. Stalzer.

Plaintiff has also made a plausible *prima facie* showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 38. "[I]t takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address." *Strike 3 Holdings, LLC v. Doe*, No. 21-1558 (GJH), 2022 WL 169698, at *2 (D. Md. Jan. 19, 2022) (citations omitted).

### B. There Are No Alternative Means to Identify Infringer

Plaintiff has diligently attempted to correlate Defendant's IP address to Defendant by searching for Defendant's IP address on various web search tools, including basic search engines like www.google.com. Plaintiff has also discussed the issue at length with computer investigators and cyber security consultants. Alone, "[t]he IP address is not sufficient for Strike 3 to identify the Doe

defendant." *Strike 3 Holdings, LLC v. Doe*, No. 21-7970 (EMC), 2021 WL 4924850, at *2 (N.D. Cal. Oct. 21, 2021). As courts routinely observe, "only the ISP can match the IP address to the subscriber's identity." *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018).

Plaintiff has been unable to identify any other way to go about obtaining the identities of its infringers and does not know how else it could possibly enforce its copyrights from illegal piracy over the Internet. "This is the case because although publicly available data allowed Plaintiff to identify the specific ISP used by Defendant as well as the city associated with the IP address, it did not permit Plaintiff to ascertain the identity of the subscriber or actual defendant." *Cobbler Nevada, LLC v. Doe-68.8.213.203*, No. 15-2729 (GPC)(JMA), 2015 WL 9026554, at *2 (S.D. Cal. Dec. 15, 2015). Thus, good cause exists as Plaintiff has "made a good faith effort to identify and locate the Defendant." *See Strike 3 Holdings, LLC v. Doe*, No. 18-47 (WQH)(RBB), 2018 WL 1427002, at *4 (S.D. Cal. Mar. 22, 2018).

### C. A Limited Subpoena Will Identify the Subscriber

"Plaintiff's subpoena clearly seeks relevant information." *Strike 3 Holdings, LLC v. Doe*, No. 22-6619 (JPC)(JW), 2022 WL 16636600, at *3 (S.D.N.Y. Nov. 2, 2022) (quoting *Strike 3 Holdings, LLC v. Doe*, 2019 WL 78987, at *3 (S.D.N.Y. Jan. 2, 2019)). "[O]btaining Defendant's name and address will enable Plaintiff to serve Defendant with the Complaint and summons [and] will allow Plaintiff to investigate whether individuals other than Defendant had access to Defendant's IP address." *Id.* Indeed, "Plaintiffs intend to use these online accounts to identify Defendant Doe." *Roe*, 2019 WL 13215281 at *3; *see Strike 3 Holdings, LLC v. Doe*, No. 19-167 (KAW), 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019) ("Plaintiff needs the subscriber information to conduct a good faith investigation.").

### D. Plaintiff's Subpoena Is Narrowly Tailored

Finally, "Plaintiff seeks only the name and permanent address of the IP address subscribers. Such identifying information is narrowly tailored, requesting no more than would be required to identify the relevant individual." *Strike 3 Holdings, LLC v. Doe*, No. 18-12585 (NLH)(JS), 2020 WL 3567282, at *8 (D.N.J. June 30, 2020) (collecting cases); *see Strike 3 Holdings, LLC v. Doe*, No. 17-1680 (CSH), 2017 WL 5001474, at *3 (D. Conn. Nov. 1, 2017) (observing that "Courts

have labeled the subscriber's identity and address as 'highly specific'"). Since the subpoena is "reasonable in scope," this supports good cause. *See PowderPak Int'l, LLC v. B.F. Mach., Ltd*, No. 16-26 (HLM), 2016 WL 9450407, at *2 (N.D. Ga. Mar. 1, 2016).

### E. Plaintiff Does Not Oppose Entry of a Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously. *See*, *e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 22-765 (KKM)(CPT), 2022 WL 1721034, at *2 (M.D. Fla. May 27, 2022). Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

/ / /

/ / /

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated: 02/06/2025

                                             Respectfully submitted,

                                             By: /s/ *Richard A. Rice, Jr.*
                                             Richard A. Rice, Jr., Esq.
                                             GA Bar No. 603203

                                             The Rice Law Firm, LLC
                                             3151 Maple Drive, NE
                                             Atlanta, GA 30305
                                             Tel.: (404) 835-0783
                                             Fax: (404) 481-3057
                                             E-mail: richard.rice@trlfirm.com
                                             *Counsel for Plaintiff*

## LOCAL RULE 7.1(D) CERTIFICATION

Pursuant to Local Rule 7.1(D), the undersigned certifies has complied with Local Rule 5.1(B) by using Times New Roman font at 14 point.

By: /s/ *Richard A. Rice, Jr.*
Richard A. Rice, Jr., Esq.

## LOCAL RULE 5.1(A)(3) CERTIFICATION

Pursuant to Local Rule 5.1(A)(3), the undersigned notes that because Defendant's identity is unknown, Plaintiff was unable to serve a copy of the papers on the unregistered party.

By: /s/ *Richard A. Rice, Jr.*
Richard A. Rice, Jr., Esq.